UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. 2:12-CR-546 |
| | § | |
| JENNIFER ELLEN MARIE RODRIGUEZ | § | |

## ORDER DENYING MOTION TO SUPPRESS

Before the Court is Defendant's Motion to Suppress Evidence. (D.E. 15.) For the reasons set forth below, Defendant's motion is denied.

I. **FINDINGS OF FACT**

The Court held an evidentiary hearing on December 3, 2012. The government's only witness was Texas Department of Public Safety Trooper Orlando Garcia. The Court found his testimony credible. Trooper Garcia's testimony was supported by an audio and video recording of the events at issue. Defendant did not produce any witnesses or exhibits. The following findings of fact are based on the evidence adduced at the hearing.

On June 23, 2012, Defendant was driving her white Ford Focus northbound on Highway 281 through the small community of Encino, Texas located approximately seventy miles north of the U.S.-Mexico border. Highway 281 is a well known alien and drug smuggling corridor, being one of the only routes north out of the Rio Grande Valley

to the rest of Texas. Trooper Garcia was performing general traffic and criminal interdiction on Highway 281.

A little after 11:00 a.m., Trooper Garcia observed Defendant traveling northbound, following too closely behind the vehicle in front of her. When Trooper Garcia pulled up behind Defendant to investigate further, he noticed that there was an object hanging from her rearview mirror. Based on these two violations (following too closely and obstruction on windshield), Trooper Garcia decided to perform a traffic stop.

At 11:09 a.m., Defendant pulled over and came to a stop on the right-hand shoulder of the highway. Trooper Garcia approached the front, passenger-side window of Defendant's vehicle and heard loud hip-hop music emanating from the car. Trooper Garcia noted that there was a bamboo plant in the back seat of the vehicle, but he did not see any other items. He identified the obstruction hanging from Defendant's rear view mirror as a college parking pass about five to six inches long and four inches wide.

Trooper Garcia told Defendant that the reason for the stop was that she had something hanging from her rear view mirror and because she was following too close to the vehicle in front of her. Defendant began to cry, and her hands were shaking. Trooper Garcia found Defendant's quick change in mood and nervousness suspicious so he asked her questions about her travel plans.

Defendant said that she was traveling to San Antonio from McAllen for her grandfather's funeral scheduled at 10:00 a.m. the following day, which was a Sunday. She stated that she would be returning to McAllen later that week. Trooper Garcia asked

where her clothes were and she said they were in the trunk. She then pressed the vehicle's trunk release button.

At 11:11 a.m., Trooper Garcia took Defendant's vehicle registration, driver's license, and identification; told Defendant that he was going to give her a warning for the traffic violations; and walked back to his patrol unit to run Defendant's information through his computer. On his way to his unit, Trooper Garcia lifted the trunk, but did not see a suitcase or clothes.

Defendant had a Mexican driver's license and a Texas identification card that listed a P.O. box as her address. Trooper Garcia saw nothing suspicious from the computer search. He walked back to Defendant's vehicle with the warning citation at 11:13 a.m.

Trooper Garcia asked Defendant to step out of her car and to go to the back of the car. He asked about the lack of clothes and Defendant said they were in a bag. She opened the trunk and pulled out a plastic bag that contained a pair of jeans, two shorts, and some tank tops. Trooper Garcia did not observe any makeup, a toothbrush, or other toiletries. Defendant said that she was going to stay with her mother and had things there. Defendant added that they had decided to wear white to the funeral. At 11:14 a.m., Defendant signed the warning.

Trooper Garcia asked Defendant where she bought the car and asked to see the paperwork. Defendant provided the information and stated that she had traded in her other car and paid the rest in cash. He asked Defendant where the funeral home was, but Defendant did not know the name of the funeral home or where it was. She said that she

was going to the funeral with her mother and that she was not familiar with San Antonio because she had grown up in Michigan.  Trooper Garcia asked why she had a Mexican driver's license and Defendant stated that she lived in Mexico with her husband.  She then indicated that she had been living in the valley for two years and her parents had recently moved to San Antonio from Michigan.

Trooper Garcia told her that her story seemed strange and asked why no one was travelling with her.  Defendant said her husband could not cross the border, that they were not actually married, and that he was in Mexico with their kids.  Trooper Garcia asked if she lived in Mexico or on this side.  Defendant then stated that she lived in Mexico.

At 11:17 a.m., Trooper Garcia handed Defendant her driver's license, identification, and vehicle registration and asked if she had anything illegal.  Defendant said, "No, you can check if you want.  You can check anything."  Trooper Garcia asked if she was giving consent to search the vehicle and Defendant said she was.  During the search, Trooper Garcia found what appeared to be bundles of narcotics hidden behind the dash.  The substance later tested positive for methamphetamine.  At 11:21 a.m., Trooper Garcia informed Defendant that she was under arrest.  The entire investigatory detention, from the beginning of the stop until Defendant's arrest, took under twelve minutes.

Trooper Garcia articulated the following observations to support his belief that Defendant was potentially engaged in smuggling contraband:  Defendant's quick change in mood when she was pulled over; he initially failed to see any clothes in the back seat or trunk; the lack of any dress clothes for the funeral; Defendant's shaky hands; the fact

that the funeral was being held on a Sunday morning, which he believed was a strange time for a funeral; the location of the stop, approximately seventy miles from the U.S.-Mexico border (a drug corridor); and the fact that the vehicle had been recently purchased. Trooper Garcia explained that drug trafficking organizations frequently purchase a vehicle for smuggling activities, place it in the driver's name, and send the driver with the vehicle to smuggle drugs through the checkpoint. Given Defendant's age and the fact that she was a college student, Trooper Garcia concluded that it was unlikely she would have been able to purchase the vehicle herself.

## II. ANALYSIS

Defendant raises three arguments: (1) that the traffic stop was unlawful as not based on reasonable suspicion or probable cause; (2) that the duration of the traffic stop was excessive so as to render Defendant's consent tainted; and (3) that Defendant's consent was not voluntary under the totality of the circumstances. (D.E. 15.)

### A. Traffic Stop Was Justified at Its Inception

An officer is justified in performing a traffic stop and detaining a motorist based on an objectively reasonable belief that a traffic violation has occurred or is about to occur. *Whren v. United States*, 517 U.S. 806, 811–13 (1996); *United States v. Khanalizadeh*, 493 F.3d 479, 481–82 (5th Cir. 2007). Trooper Garcia observed two separate traffic violations under Texas law: (1) Defendant was traveling too close to the vehicle in front of her, and (2) Defendant had an object obstructing her view through the windshield. Accordingly, the Court concludes that the detention was justified at its inception.

## B. Duration of the Traffic Stop Was Reasonable

Routine traffic stops, whether supported by probable cause or reasonable suspicion, are treated as *Terry* stops and subject to the Fourth Amendment's reasonableness requirement. *See Ohio v. Robinette*, 519 U.S. 33, 39 (1996) ("touchstone of Fourth Amendment analysis is reasonableness"); *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984). In addition to being justified at its inception, for an investigatory detention to be reasonable under the Fourth Amendment, "it must be temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges." *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004); *see also Machuca-Barrera*, 261 F.3d 425, 434 (5th Cir. 2001). During a traffic stop, when reasonable suspicion of criminal activity beyond that which formed the basis for the stop arises, the officer must likewise work diligently to confirm or dispel his suspicions and cannot unnecessarily prolong the stop. *Brigham*, 382 F.3d at 507.

In the case at hand, the basis for the initial traffic stop had been discharged at 11:13 a.m., when Trooper Garcia exited his patrol unit with the warning and walked back to Defendant's vehicle. With regard to the traffic offenses for which Defendant had been initially detained, there was nothing left for Trooper Garcia to do except return Defendant's registration, identification, and driver's license and issue her the warning. Consequently, in order for Defendant's continued detention to be reasonable, Trooper Garcia must have observed and been able to articulate for the Court specific facts giving rise to an objectively reasonable suspicion that criminal activity was afoot. *See United*

*States v. Pack*, 612 F.3d 341, 350 (5th Cir. 2010) ("If the officer develops reasonable suspicion of additional criminal activity during his investigation of the circumstances that originally caused the stop, he may further detain its occupants for a reasonable time while appropriately attempting to dispel this reasonable suspicion.").

The observations articulated by Trooper Garcia as set forth in the above Findings of Fact demonstrate an objectively reasonable suspicion that Defendant was engaged in illegal activity. The Court must consider the totality of the circumstances in its analysis, including the area's proximity to the border, the characteristics of the area, the officer's experience in detecting illegal activity, and the driver's behavior. *United States v. Olivares-Pacheco*, 633 F.3d 399, 402 (5th Cir. 2011).

"Factors that ordinarily constitute innocent behavior may provide a composite picture sufficient to raise reasonable suspicion in the minds of experienced officers." *United States v. Jacquinot*, 258 F.3d 423, 427–28 (5th Cir. 2001). The Court is permitted to give due weight to those factual inferences reached by an officer, who, through his experience and specialized training, is able to make inferences and deductions about the cumulative information that would elude an untrained person. *United States v. Arvizu*, 534 U.S. 266, 273–74 (2002). Considering the totality of the circumstances, the Court concludes that Trooper Garcia had reasonable suspicion to prolong the stop to question Defendant and attempt to confirm or dispel his suspicions of criminal activity.

Even so, reasonable suspicion of criminal activity does not permit an officer to prolong a stop indefinitely; the length of the detention must be reasonable under the circumstances. "In assessing whether a detention is too long in duration to be justified as

an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *United States v. Sharpe*, 470 U.S. 675, 686 (1985).

In the case at hand, the investigatory detention was extended from 11:13 a.m. until 11:21 a.m. (from the time the purpose for the initial stop had been discharged until Trooper Garcia finished his search of the vehicle and placed Defendant under arrest). The Court concludes that Trooper Garcia's investigative methods were reasonable under the circumstances, and they did not unnecessarily prolong the stop. Trooper Garcia worked diligently to confirm or dispel his suspicions of criminal activity. Including the search of the vehicle, it only took an additional eight minutes after the end of the traffic stop for Trooper Garcia to conclude his investigation, and the entire stop lasted only twelve minutes.

Trooper Garcia proceeded deliberately with his investigation, following up on his initial questions where he believed there were inconsistencies. Not having dispelled his suspicions of criminal activity, Trooper Garcia asked Defendant if she had anything illegal in the car and she told him he could check. Trooper Garcia spent three minutes searching the vehicle before he found the narcotics. The Court concludes that, considering the totality of the circumstances, Trooper Garcia's investigative methods were reasonable, and they did not constitute a Fourth Amendment violation.

## C. Defendant Voluntarily Consented to the Search of Her Vehicle

A warrantless search by police constitutes a violation of the Fourth Amendment and is invalid unless it falls within one of the recognized exceptions to the Constitution's warrant requirement. *Flippos v. West Virginia*, 528 U.S. 11, 13 (1999). One exception to the warrant requirement is a search conducted pursuant to consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). In such cases, the government has the burden of demonstrating that the Defendant's consent was freely and voluntarily given. *Id*. at 222. "[T]he question whether consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Id*. at 227. The Fifth Circuit has set forth six factors the Court may consider:

> (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found.

*United States v. Jenkins*, 46 F.3d 447, 451 (5th Cir. 1995). The Court now considers each of these factors.

At the time she consented to the search of her vehicle, Defendant was detained for further investigation under suspicion of smuggling contraband. Although Defendant was not under arrest, neither was she free to go. Trooper Garcia had returned Defendant's documents before he asked for consent to search; however, a reasonable person in her position would not have believed that she was free to leave. *United States v. Mendenhall*,

446 U.S. 544, 554 (1980). Accordingly, Defendant's continued presence was not voluntary.

With regard to the second and third factors, the Court concludes that there was no coercion and Defendant was very cooperative throughout. Defendant offered to let Trooper Garcia search her car for drugs or other contraband without being asked, and there were no threats, yelling, badgering, or promises made by Trooper Garcia, who maintained a professional and calm demeanor throughout the encounter. Additionally, Defendant voluntarily provided access to her locked trunk on two occasions without a request from Trooper Garcia. This weighs heavily in favor of a finding of voluntariness.

There is no evidence as to whether Defendant knew that she had the right to refuse consent. Defendant is young, she does not have a college degree, and there was no evidence of a criminal or arrest record for Defendant. Trooper Garcia did not inform her that she had the right to refuse consent. There is little evidence as to whether Defendant believed any contraband would be found. She denied having any drugs and seemed eager for Trooper Garcia to search the vehicle.

After considering the totality of the circumstances, the Court concludes that Defendant's consent was freely and voluntarily given.

## III. CONCLUSION

For the reasons set forth above, Defendant's Motion to Suppress Evidence (D.E. 15) is DENIED.

ORDERED this 8th day of January, 2013.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE